UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ANTONIO ROJAS RODRIGUEZ, CRISTAL CARRENO, and ALAN VELASQUEZ, on behalf of themselves and others similarly situated, | ) ) ) ) | Civil Action No.: 2:15-CV-2317-BHH |
| | ) | |
| Plaintiffs, | ) | **Opinion and Order** |
| vs. | ) ) | |
| | ) | |
| JOHN L. FINAN, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiffs' motion for class certification (ECF No. 10) and Defendants' Finan, Parker, Settlemyer, Hofferth, Seckinger, Munns, Horne, Kuhl, Phillips, Temple, Lynn, Love, Batson, Whitaker, and Carullo ("CHE Defendents") motion to dismiss or for judgment on the pleadings (ECF No. 59). For the reasons set forth in this Order, Plaintiffs' motion for class certification is denied with permission to refile once an adequate factual record has been developed, and Defendants' motion to dismiss is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is about regulations promulgated by the South Carolina Commission on Higher Education ("Commission" or "CHE") that have been interpreted to classify students who are U.S. citizens residing in the State of South Carolina, and dependent upon parents with undocumented federal immigration status also residing in South Carolina, as non-residents for purposes of in-state tuition, state financial aid, and state

scholarship eligibility. Plaintiffs, on behalf of themselves and others similarly situated, have alleged that this classification as non-residents is unjustly and unconstitutionally applied to them solely because of their parents' unlawful immigration status. When classified as a non-resident, students pay significantly higher tuition rates to attend South Carolina's public colleges and universities, (ECF No. 1 at ¶ 43-44), and are denied certain forms of state financial aid and state scholarships at both public and private post-secondary institutions. Plaintiffs allege that Defendants' policy of classifying U.S. citizen dependent students as non-residents, when they would otherwise be eligible for in-state residency, based solely on their parents' immigration status, violates their right to equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution. (ECF No. 1 at ¶ 5.)

Plaintiffs are all dependent U.S. citizens who aspire to earn degrees from South Carolina post-secondary institutions. Plaintiff Antonio Rojas Rodriguez is a U.S. citizen by birth. He has resided continuously with his mother in Summerville, South Carolina for approximately ten years. Plaintiff Rodriguez attended public high school in Goose Creek, South Carolina and upon graduating was accepted for enrollment at the College of Charleston in June of 2015. During the admissions process Plaintiff Rodriguez was classified as a "non-resident" by the College of Charleston, and he alleges that such classification was because he is dependent on his mother and was unable to prove that she has lawful immigration status. (ECF No. 1 at ¶ 5.) As a result of this classification as a "non-resident," Plaintiff Rodriguez stood to pay significantly higher tuition at an out-of-state rate, and was deemed ineligible for state academic merit scholarships and need-based grants for which he otherwise qualified. When he filed this complaint, Plaintiff

Rodriguez represented that he would not be able to afford to enroll at the College of Charleston because his residency classification denied him access to all of this financial relief. (*Id.*) However, as of the date of this Order, Plaintiff Rodriguez has entered into a settlement agreement with Defendant Glenn McConnell, in his official capacity as President of the College of Charleston, wherein the College confirmed to Plaintiff Rodriguez that he is now classified as an in-state student for tuition and financial aid purposes, and Plaintiff Rodriguez agreed to release all claims against the College arising from his original residency determination. (ECF No. 89-1 at 1, 4.) On October 30, 2015, the Court entered a Consent Order dismissing Plaintiff Rodriguez's claims against the College of Charleston with prejudice. (ECF No. 91.)

Plaintiff Cristal Carreno is a U.S. citizen by birth. She has resided continuously with her parents in Inman, South Carolina, for approximately nineteen years. She is currently a full-time student at Converse College ("Converse") in Spartanburg, South Carolina, where she entered her junior year in the fall of 2015. (ECF No. 1 at ¶ 6.) Plaintiff Carreno alleges that she has been classified as a "non-resident" because she is a dependent of her parents and is unable to show that they have lawful immigration status. (*Id.*) She further claims that as a result of this finding of non-residency, she has been denied thousands of dollars in state academic merit scholarships and need-based grants for which she otherwise qualifies. (*Id.*) At the time she filed her complaint, Plaintiff Carreno represented that if she could not secure this state financial aid for the 2015-2016 academic year, she would be forced to borrow large amounts of money to cover her tuition costs and would likely have to obtain another part-time job in addition to her current job and course load. (*Id.*)

Plaintiff Alan Velasquez is a U.S. citizen by birth. He has lived in North Charleston, South Carolina for the past seventeen years. Plaintiff Velasquez graduated from Trident Baptist Academy in Goose Creek, South Carolina in June 2014 and became a member of the South Carolina Air National Guard. He applied to Trident Technical College ("Trident") in Charleston and was granted admission, with the plan of beginning attendance in the fall 2015 semester. (ECF No. 1 at ¶ 7.) Plaintiff Velasquez alleges that Trident classified him as a "non-resident" because he is a dependent of his mother and is unable to show that she has lawful immigration status. (*Id.*) When he filed his complaint, Plaintiff Velasquez represented that he would be assessed a higher out-of-state tuition rate, as well as precluded from eligibility for state scholarships and need-based grants, as a result of his classification of non-residency. (*Id.*) He further represented that the "non-resident" tuition rate and denial of state financial aid would likely preclude him from enrolling at Trident because he could not afford it. (*Id.*) However, as of the date of this Order, Plaintiff Velasquez has entered into a settlement agreement with Defendant Mary Thornley, in her official capacity as President of Trident, wherein Trident confirmed to Plaintiff Velasquez that he is now classified as an in-state student for tuition and financial aid purposes, and Plaintiff Velasquez agreed to release all claims against Trident arising from his original residency determination. (ECF No. 89-2 at 1, 3.) On October 30, 2015, the Court entered a Consent Order dismissing Plaintiff Velasquez's claims against Trident with prejudice. (ECF No. 91.)

Defendant Glenn McConnell is the President of the College of Charleston. Plaintiffs alleged that in his role as President, Mr. McConnell exercised managerial and administrative authority for the ongoing operations of the College of Charleston. (ECF

No. 1 at ¶ 23.) Defendant McConnell was sued in his official capacity only. As noted above, all claims against Mr. McConnell have been dismissed with prejudice. (ECF No. 91.)

Defendant Mary Thornley is the President of Trident Technical College. Plaintiffs alleged that in her role as President, Dr. Thornley exercised managerial and administrative authority for the ongoing operations of Trident. (ECF No. 1 at ¶ 24.) Defendant Thornley was sued in her official capacity only. As noted above, all claims against Dr. Thornley have been dismissed with prejudice. (ECF No. 91.)

Defendant John Finan is the Chairman of the South Carolina Commission on Higher Education. Defendant Finan was appointed to this position by the Governor of South Carolina for a term of four years. S.C. Code § 59-103-10(4). Defendant Finan is sued in his official capacity. (ECF No. 1 at ¶ 8.)

Defendant Julie Carullo is the interim Executive Director of the CHE. Plaintiffs allege that in her role as interim Executive Director, Ms. Carullo is the chief administrator of the CHE, recommends policies and implements procedures, and directs all operations of the CHE. (*Id.* at ¶ 22.) Defendant Carullo is sued in her official capacity only.

Defendants Clark Parker, Jennifer Settlemyer, Tim Hofferth, Terrye Seckinger, Charles Munns, Bettie Rose Horne, Dianne Kuhl, Kim Phillips, Hood Temple, Louis Lynn, Allison Love, Paul Batson, and Evans Whitaker are all members of the CHE. They were appointed to their respective positions by the Governor of South Carolina for terms of either two or four years. S.C. Code § 59-103-10. They are each sued in their official capacity. (ECF No. 1 at ¶¶ 9-21.)

Plaintiffs filed their class action complaint on June 8, 2015 requesting that the

Court:

Certify this matter as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

Declare that the challenged policies of classifying dependent students as non-residents for tuition, scholarship, and grant purposes solely because they lack proof of their parents' citizenship or immigration status violate the Equal Protection Clause of the United States Constitution;

Enjoin Defendant McConnell from requiring Plaintiff Antonio Rojas Rodriguez and similarly-situated students to provide proof of their parents' citizenship or immigration status in order to be classified as South Carolina residents for tuition purposes at the College of Charleston;

Enjoin Defendant Thornley from requiring Plaintiff Alan Velasquez and similarly-situated students to provide proof of their parents' citizenship or immigration status in order to be classified as South Carolina residents for tuition purposes at Trident Technical College;

Enjoin the CHE Defendants from denying Plaintiffs Antonio Rojas Rodriguez, Cristal Carreno, Alan Velasquez, and similarly-situated students the Palmetto Fellows, LIFE, and/or HOPE scholarships, as well as the SC Need-Based Grant and/or Lottery Tuition Assistance, based solely on their inability to provide proof of their parents' citizenship or immigration status;

Enjoin the CHE Defendants from requiring that dependent U.S. citizen students who reside in South Carolina provide proof of their parents' citizenship or immigration status for purposes of eligibility for in-state tuition, state scholarships, and state need-based financial aid;

Direct the CHE Defendants to immediately inform all colleges and universities in South Carolina that for purposes of determining the residency status of students as it relates to tuition, merit scholarships, and need-based grants, the colleges and universities may not inquire into the citizenship or immigration status of the parent(s) of the student;

Grant Plaintiffs the reasonable costs of suit and reasonable attorneys' fees and other expenses pursuant to 42 U.S.C. § 1988.

(ECF No. 1 at 23-24.) Plaintiffs then filed their motion for class certification on June 12,

6

2015. (ECF No. 10.) A response and reply were filed in turn. (ECF Nos. 46, 53.) The CHE Defendants filed their motion to dismiss or for judgment on the pleadings on July 27, 2015. (ECF No. 59.) A response and reply were filed in turn. (ECF Nos. 77, 82.) Plaintiffs and Defendants McConnell and Thornley filed a joint motion to dismiss pursuant to settlement agreements on October 23, 2015 (ECF No. 89), and the Court entered an order to that effect on October 30, 2015 (ECF No. 91).

## **LEGAL AND REGULATORY BACKGROUND**

In South Carolina, a dependent student is eligible for in-state tuition rates and state financial aid if the person upon whom they are dependent is eligible for in-state rates. The burden of proving eligibility for in-state tuition rates is always on the student:

> Each State Institution shall designate an official to administer the provisions of this chapter. Students making application to pay tuition and fees at in-state rates shall have the burden of proving to the satisfaction of the aforesaid officials of State Institutions that they have fulfilled the requirements of this chapter before they shall be permitted to pay tuition and fees at such rate.

S.C. Code § 59-112-80. For independent persons and their dependents, domicile and residence for purposes of in-state tuition can be demonstrated by those persons either making South Carolina their permanent home for at least twelve months, or by living in South Carolina for less than twelve months and having full-time employment in the state. S.C. Code § 59-112-20(A), (B). "The residence and domicile of a dependent minor [is] *presumed* to be that of the parent of such dependent minor." S.C. Code § 59-112-20(D) (emphasis added). A "dependent" is defined, in relevant part, as "one whose financial support is provided not through his own earnings or entitlements, but whose predominant source of income or support is payments from a parent, spouse, or guardian, and who qualifies as a dependent or an exemption on the federal tax return of

the parent, spouse, or guardian." S.C. Code § 59-112-10(G). A "minor" is defined as "a person who has not attained the age of eighteen years". S.C. Code § 59-112-10(H). Moreover, persons who cannot establish that they are lawfully present are barred from eligibility for in-state rates: "An alien unlawfully present in the United States is not eligible on the basis of residence for a public higher education benefit including, but not limited to, scholarships, financial aid, grants, or resident tuition." S.C. Code § 59-101-430(B).

Taking the above statutory provisions together, all dependent U.S. citizen students are *presumed* not to be South Carolina residents for tuition purposes if they are dependent upon persons who cannot demonstrate they have a lawful immigration status or, in the case of dependent minors, their parents cannot demonstrate a lawful immigration status. Furthermore, residency determinations for other forms of South Carolina state financial aid, including the Palmetto Fellows Scholarship, LIFE Scholarship, SC HOPE Scholarship, South Carolina Need-Based Grants Program, and Lottery Tuition Assistance Program, rely on the determination of residency for tuition purposes. *See* S.C. Code §§ 59-104-20 (Palmetto Fellows Scholarship), 59-142-10 (South Carolina Need-Based Grants Program), 59-149-20 (LIFE Scholarship), 59-150-370 (SC HOPE Scholarship), 59-150-360 (Lottery Tuition Assistance Program).

The CHE has the "authority and responsibility for a coordinated, efficient, and responsive higher education system in this State consistent with the missions of each type of institution." S.C. Code § 59-103-20. Moreover, the CHE is generally tasked to "ensure access and equity opportunities at each institution of higher learning for all citizens of this State regardless of race, gender, color, creed, or national origin within

the parameters provided by law." S.C. Code § 59-103-45(7). Consistent with its own statutorily defined mission set, the Commission has promulgated regulations specifically related to the determination of residency for tuition and scholarship purposes. *See* S.C. Code § 59-112-100 (granting authority to "prescribe uniform regulations").

Under the applicable regulations, a "resident" for tuition and fees purposes is defined as "an independent person who has abandoned all prior domiciles and has been domiciled in South Carolina continuously for at least twelve months immediately preceding the first day of class of the term for which resident classification is sought...." S.C. Code of Reg. § 62-602(N). Furthermore, "the residence and domicile of a dependent person [is] *presumed* to be that of their parent, spouse, or guardian." S.C. Code of Reg. § 62-603(B) (emphasis added). A "dependent person" is defined as "one whose predominant source of income or support is from payments from a parent, spouse, or guardian, who claims the dependent person on his/her federal income tax return." S.C. Code of Reg. § 62-602(C). One discernable difference between these regulations and the aforementioned statutes is that the regulations do not limit the presumption of mirrored residency to "dependent minors," rather the regulatory presumption applies to all "dependent persons." CHE regulations dictate that the various forms of state scholarship and need-based financial aid utilize the same residency requirements used in a residency determination for tuition and fees purposes. *See* S.C. Code of Reg. §§ 62-310(MM) & 62-315(A)(3) (Palmetto Fellows Scholarship), 62-460(R) & 62-465(A) (South Carolina Need-Based Grants Program), 62-900.95(A) (SC HOPE Scholarship), 62-900.160(Q) & 62-900.165(A) (Lottery Tuition Assistance Program), 62-1200.5(NN) & 32-1200.10(A) (LIFE Scholarship).

Similar to the statutory scheme, the regulatory framework categorically excludes "non-resident aliens" from eligibility to receive state sponsored scholarships, though certain specified visa classifications may make non-resident aliens eligible for in-state tuition. S.C. Code of Reg. § 62-604(A). A "non-resident alien" is defined as "a person who is not a citizen or permanent resident of the United States," by virtue of which status such a person "generally [does] not have the capacity to establish domicile in South Carolina." S.C. Code of Reg. § 62-602(K).

Thus, much like the statutes already described, the regulatory scheme pertaining to in-state tuition and state sponsored scholarships directs South Carolina colleges and universities to *presume* that dependent U.S. citizens are not residents of South Carolina if the person who provides their predominant source of income or support cannot demonstrate lawful immigration status. At the time the motions currently under review were filed, the Commission had not yet promulgated any regulation or issued any formal guidance explicitly stating that this presumption could be rebutted.[1] However, all South Carolina colleges and universities were and are required by regulation to establish an

_____

[1] For clarity, the Court notes that during the pendency of this litigation, on October 21, 2015, the CHE approved a guidance document entitled, "Residency for Tuition/Fee and State Scholarship/Grant Purposes of US Citizen Students with Undocumented Parents." (Carullo Aff. Ex. A, ECF No. 88-2.) The stated purpose of the document is to provide guidance to institutional residency officials and institutional residency appeal committees that encounter the scenario where U.S. citizen students are dependent on a parent or guardian who has undocumented immigration status. (*Id.* at 2.) Included within the guidance is a CHE directive that states, "a U.S. citizen student who can establish domicile in South Carolina should not be denied in-state residency on the basis of his/her parent's undocumented status." (*Id.* at 3.) The Court describes this submission for purposes of clarity only, and declines to consider the guidance document in ruling on the motion to dismiss. "In resolving a motion pursuant to Rule 12(b)(6) or Rule 12(c), a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). There are limited exceptions for "written instruments" that are attached to the complaint. *See*, Fed. R. Civ. P. 10(c). Likewise, "courts may consider a document attached by the defendant to its motion to dismiss where the document 'was integral to and explicitly relied on in the complaint' and where 'the plaintiffs do not challenge its authenticity.'" *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.2004)). The CHE guidance document was not integral to the complaint and the Court will not consider it at this stage of the proceedings.

appeals process to be utilized by any student who disagrees with the initial residency

determination made by the relevant institution:

> Each institution will develop an appeals process to accommodate persons wishing to appeal residency determinations made by the institution's residency official. Each institutions [sic] appeal process should be directed by that institutions [sic] primary residency officer, in conjunction with those individuals who practice the application of State residency regulations on a daily basis. The professional judgment of the residency officer and administrators will constitute the institutional appeal process. Neither the primary residency official nor appellate official(s) may waive the provisions of the Statute or regulation governing residency for tuition and fee purposes.

S.C. Code of Reg. § 62-612(B). In a manner similar to the statutory scheme regarding

residency, CHE regulations place the burden of proof on the student to establish

eligibility for in-state tuition rates and state scholarships:

> Institutions of higher education are required by the Statute to determine the residence classification of applicants. The initial determination of one's resident status is made at the time of admission. The determination made at that time, and any determination made thereafter, prevails for each subsequent semester until information becomes available that would impact the existing residency status and the determination is successfully challenged. The burden of proof rests with the students to show evidence as deemed necessary to establish and maintain their residency status.

S.C. Code of Reg. § 62-600(B). The burden is the same with respect to domicile:

> If a person asserts that his/her domicile has been established in this State, the individual has the burden of proof. Such persons should provide to the designated residency official of the institution to which they are applying any and all evidence the person believes satisfies the burden of proof. The residency official will consider any and all evidence provided concerning such claim of domicile, but will not necessarily regard any single item of evidence as conclusive evidence that domicile has been established.

S.C. Code of Reg. § 62-605(B).

The Plaintiffs allege that pursuant to the above regulations, the CHE and

colleges and universities within the state have adopted policies that dependent students

who otherwise reside and are domiciled in the State but whose parents are not (i) citizens of the United States; (ii) lawful permanent residents; or (iii) immigrants in an authorized visa category, are not eligible for in-state tuition, academic merit scholarships, and need-based grants that require South Carolina residency. (ECF No. 1 at ¶ 41.)

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in

support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

### I. Motion to Dismiss or for Judgment on the Pleadings

CHE Defendants have filed a motion to dismiss the class action complaint pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively Rule 12(c),[2] seeking dismissal on

---

[2] Although CHE Defendants have already filed an answer in the case, they asserted the failure to state a cause of action upon which relief may be granted as a defense and explicitly reserved their right to file a motion to dismiss pursuant to Rule 12(b)(6). (ECF No. 38 at ¶ 63.) "Rule 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted as set forth in Rule 12(b)(6) may be

the basis of absolute legislative immunity. CHE Defendants argue that a fair reading of the Plaintiffs' complaint indicates that they are being sued exclusively for exercising their legislative or quasi-legislative authority, namely, for promulgating or failing to amend/repeal the CHE regulations relating to residency determinations. As support for this notion, CHE Defendants point to what they construe as Plaintiffs effort to mandate the functional equivalent of new regulations through injunctive relief, specifically, Plaintiffs request that the Court order CHE Defendants to "inform all colleges and universities in South Carolina that for purposes of determining the residency status of students as it relates to tuition, merit scholarship, and need-based grants, the colleges and universities may not inquire into the citizenship or immigration status of the parent(s) of the student." (*See* ECF No. 59-1 at 3; ECF No. 1 at 24.) CHE Defendants aver that the complaint does not identify any act or omission by CHE Defendants, other than promulgating or failing to amend/repeal the regulations, that has allegedly caused constitutional harm to Plaintiffs.

In *Bogan v. Scott Harris*, 523 U.S. 44 (1998), the U.S. Supreme Court held that state and local legislators are entitled to absolute immunity under 42 U.S.C. § 1983 for their legislative activities. *Id.* at 49. Prior to *Bogan*, that rule had already been established law in the Fourth Circuit. *See Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980). In *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980), the U.S. Supreme Court held that the members of the Virginia

---

raised 'by motion for judgment on the pleadings, or at the trial on the merits.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Moreover, "viewing the Defendants' motion as a Rule 12(c) motion does not have a practical effect" because the Court still applies a Rule 12(b)(6) standard. *Id.*; *see also Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002) ("the distinction is one without a difference"). CHE Defendants have presented their motion as a Rule 12(b)(6) motion to dismiss, or alternatively as a Rule 12(c) motion for judgment on the pleadings, and the Court considers it to be timely filed.

Supreme Court were entitled to absolute legislative immunity in connection with their promulgation of the State Bar Code. *Id.* at 734. The Supreme Court in that case explained that absolute legislative immunity is *immunity from suit*, not simply immunity from liability for money damages. The Court stated:

> We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause, *Tenney v. Brandhove*, 341 U.S. 367 (1951). In *Tenney* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. *Although Tenney involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief.* In holding that § 1983 does not create civil liability for acts undertaken in a field where legislators traditionally have power to act, we did not distinguish between actions for damages and those for prospective relief. Indeed, we have recognized elsewhere that a private civil action, whether for an injunction or damages, creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation. Although the separation-of-powers doctrine justifies a broader privilege for Congressmen than for state legislators in criminal actions, we generally have equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution. Thus, there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity.

*Id.* at 732-34 (emphasis added) (internal quotations, modification, and citations omitted). The Supreme Court concluded that the Virginia Supreme Court and its chief justice enjoyed immunity to the same degree as state legislators where the claims concerned their "issuance of, or failure to amend, the challenged rules." *Id.* at 734.

While the analogy between the Virginia Supreme Court's promulgation of the State Bar Code and the CHE's promulgation of the residency regulations is clear, Plaintiffs contend that the analysis should not stop there. They argue that CHE

15

Defendants' claim to legislative immunity is misplaced because the actions they are challenging as unconstitutional were taken in an administrative or enforcement capacity not properly defined as *legislative or quasi-legislative*. (ECF No. 77 at 1 (citing *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995)).) Plaintiffs specifically disclaim that they allege liability on the basis of CHE Defendants' promulgation of regulations or the failure to amend those regulations. Rather, they assert that they are challenging CHE Defendants' *administrative and executive* actions in: "1) denying Plaintiffs and others similarly-situated in-state tuition, merit-based scholarships, and need-based grants due solely to their inability to show proof of their parents' immigration status, and 2) requiring dependent U.S. citizen students to show proof of their parents' immigration status for purposes of eligibility for tuition, scholarships, and grants." (ECF No. 77 at 2.)

Plaintiffs liken this case to *Alexander v. Holden*, 66 F.3d 62 (4th Cir. 1995). In *Alexander*, the Fourth Circuit held that legislative immunity did not extend to county commissioners' actions in eliminating a particular position's salary, which resulted in an employee being terminated, because those actions were more akin to administrative employment decisions than the process of adopting prospective, legislative-type rules. *Id.* at 67. In characterizing the county commissioners' actions as administrative rather than legislative, the *Alexander* court reasoned, "Both the facts underlying the commissioners' decision and the impact of the commissioners' decision were specific, rather than general, in nature." *Id.* (citing *Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 23 (1st Cir. 1992)). In so doing, the Fourth Circuit adopted the approach taken by the First Circuit in *Acevedo-Cordero*, which concluded that an action that "'single[s] out specifiable individuals and affect[s] them differently from others,' is administrative."

*Acevedo-Cordero*, 958 F.2d at 23 (quoting *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984)) (modifications in original).[3]

Moreover, the U.S. Supreme Court acknowledged the split role that certain government entities play in *Supreme Court of Virginia* when it stated, "the Virginia Court performs more than a legislative role with respect to the State Bar Code. It also hears appeals from lower court decisions in disciplinary cases, a traditional adjudicative task; and in addition, it has independent enforcement authority of its own." 446 U.S. at 734. Accordingly, the Court held that because the professional responsibility code gave the Virginia Court authority to independently initiate proceedings against attorneys, "the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, *just as other enforcement officers and agencies were.*" *Id.* at 736 (emphasis added). The Court also noted, "*mere enforcement authority does not create a case or controversy with the enforcement official*, but in the circumstances of this case, a sufficiently concrete dispute is as well made out against the Virginia Court as an enforcer as against the State Bar itself." *Id.* at 736 n.15 (citing *Person v. Association of Bar of New York*, 554 F.2d 534, 536-537 (2nd Cir. 1977)) (emphasis added).

Plaintiffs assert that their constitutional challenge is similar to the challenge in *Alexander* because they do not challenge the *general* residency policies of the CHE (e.g. the regulations as they apply to prohibit children of North Carolina resident parents from qualifying for in-state tuition or state scholarships). (ECF No. 77 at 3-4.) Rather, Plaintiffs' argue, they challenge the *application* of CHE policies to deny Plaintiffs and

---

[3] It should be noted however, that the Fourth Circuit in *Alexander* took care to limit its holding: "We emphasize that our holding in this case is a narrow one. It should not be read to imply that every municipal decision to consolidate or otherwise combine the duties of positions is administrative in character. Such steps will often constitute legitimate structural reforms of a legislative nature." 66 F.3d at 67-68.

those similarly-situated in-state residence based solely on their parents' immigration status, a necessarily *specific* enforcement exercise. (*Id.* at 4.)

The Court would begin by noting that Plaintiffs' pleading with respect to CHE Defendants' alleged conduct is very thin on anything other than the residency regulations themselves. In other words, while Plaintiffs repeatedly insist that they have not sued CHE Defendants for conduct protected by legislative immunity (e.g. promulgation of the regulations), there is little other conduct in the complaint that is attributable to CHE Defendants. Plaintiffs narrowly escape dismissal by explaining that their complaint challenges CHE Defendants "policies" as they relate to residency determinations, not the regulations themselves. (*See* ECF No. 1 at ¶¶ 34, 41, 89, 90, 92, 95.)

The Court understands the distinction, but it is a fine distinction to be sure, particularly in light of the fact that the regulatory scheme places responsibility for residency determinations firmly in the hands of the individual institution in any particular case. *See* S.C. Code of Reg. § 62-600(B) ("Institutions of higher education are required by the Statute to determine the residence classification of applicants."); *see also* S.C. Code § 59-112-80 ("Students making application to pay tuition and fees at in-state rates shall have the burden of proving *to the satisfaction of the [State Institution residency official]* that they have fulfilled the requirements of this chapter before they shall be permitted to pay tuition and fees at such rate." (emphasis added)), S.C. Code of Reg. § 62-605(B) (dictating that an individual attempting to satisfy the burden of proof to establish domicile in the State must provide evidence to the designated residency official at the relevant public or independent institution), § 62-612(A) ("Inquiries

regarding residency requirements and determinations should be directed to the institutional residency official."), § 62-612(B) (directing each institution to establish a residency determination appeals process, and stating that the professional judgment of the residency officer and relevant administrators at the institution will constitute that appeals process). Plaintiffs' complaint does not include any allegations that CHE Defendants have authority to make residency determinations or are an entity to which a party challenging a residency determination can appeal. In truth, the face of the complaint is entirely non-specific as to what "administrative and enforcement" actions CHE Defendants may have taken that resulted in alleged constitutional harm.

Nevertheless, the Court understands Plaintiff's core theory to be that while the institutions may, as a technical matter, make the residency determination in any particular case, the CHE as a body has established policies that ensure the institutions arrive at the particular result that Plaintiffs are challenging as unconstitutional. (*See* ECF No. 77 at 7-8.) In this way, as the Court views Plaintiffs' assertions, when an institutional residency officer applies the regulations to a dependent student with undocumented parents, they are essentially beholden to the CHE's interpretation of its own regulations and reach the putatively unconstitutional result almost axiomatically. The Court reiterates that it understands this theory. However, the Court would point the Plaintiffs to the Court's recent Order granting the CHE Commissioners' motion for summary judgment in the companion case, *Angelica Rocha Herrera v. John L. Finan, et al.*, C/A No. 7:14-CV-2255-BHH (ECF No. 62), as foreshadowing a possible result here if the Plaintiffs are not able to produce actual evidence showing that CHE Defendants established, administered, or enforced the alleged policies. CHE Defendants essentially

complain that Plaintiffs have not pled enough facts to raise their claims about these alleged policies above the speculative level, and thus have not met the plausibility requirement established in *Iqbal*. The Court is close to agreement with that position. Nonetheless, by finding here that Plaintiffs have alleged a plausible claim to relief, the Court grants Plaintiffs some leeway in developing a record of such policies, which, if they exist, would be admittedly difficult to quantify at the pleading stage given that they are apparently not formally memorialized. Accordingly, CHE Defendants' motion to dismiss is denied.

## II. Motion for Class Certification

Approximately one week after filing their class action complaint, Plaintiffs filed their motion for class certification. (ECF No. 10.) The proposed class is defined as:

> All individuals who can or will be able to establish residency for tuition purposes in South Carolina pursuant to S.C. Code Ann. Reg. §§ 62-602(N) and 62-603 but for a lack of proof that their parents are U.S. citizens or lawful permanent residents, or are in certain eligible immigration classifications, who are enrolled or intend to enroll in a college or university in South Carolina.

(ECF No. 1 at 87; ECF No. 10-1 at 2.) In support of their motion, Plaintiffs have submitted the declaration of Plaintiff Rodriguez (ECF No. 10-2), the declaration of Plaintiff Carreno (ECF No. 10-3), the declaration of Plaintiff Velasquez (ECF No. 10-4), the declaration of Dr. Randy Capps, Director of Research for U.S. Programs at the Migration Policy Institute (ECF No. 10-5), and the declaration of putative class counsel James Knoepp, Deputy Legal Director at the Southern Poverty Law Center (ECF No. 10-6).

Dr. Capps' declaration includes research-based estimates of the number of U.S. citizen children born to undocumented parents residing in South Carolina (1,300) and

the number of those children who will enroll in South Carolina post-secondary education institutions each year (170 total, 140 in public colleges or universities). (ECF No. 10-5 ¶¶ 7, 11, 12.) In their reply, Plaintiffs also submitted an email chain between a financial aid representative at Converse College, Nancy Garmroth, and a representative of CHE, Mr. Gerrick Hampton, purportedly pertaining to the residency question in Plaintiff Carreno's case. (ECF No. 53-1 at 1-5.) Plaintiffs argue that they have satisfied the four prerequisites for class certification established by Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation. *See Gunnells v. Healthplan Servs. Inc.*, 348 F.3d 417, 423 (4th Cir. 2003); (ECF No. 10-1 at 3-10). Plaintiffs further argue that their current submissions satisfy Rule 23(b), because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2); (ECF No. 10-1 at 10-12).

CHE Defendants responded by arguing that the motion for class certification was premature, and requested that the motion not be heard until such time as discovery directed at class certification-related issues could be completed. (ECF No. 46 at 2.) Specifically, CHE Defendants argue that they cannot have a fair and educated chance to respond meaningfully to the class certification motion without a more developed factual record. They anticipate needing to engage in discovery to address the elements of numerosity, commonality, and typicality, as well as the propriety of the proposed class definition as it relates to the rest of the regulatory scheme regarding student residency. (*Id.* at 3.) No discovery of any kind had been completed prior to the deadline

for CHE Defendants' response to Plaintiffs' class certification motion. (*Id.*; ECF No. 40.)

Courts within the Fourth Circuit have noted that "the weight of authority leans heavily in favor of determining class certification after further evidentiary development through discovery." *See, e.g.*, *Boyce v. Wachovia Securities, LLC*, 2010 WL 1253744, *8 (E.D.N.C. 2010). Moreover, "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings, and where facts developed during discovery proceedings are inadequate, an evidentiary hearing should be held on the request of the parties or, if necessary for a meaningful inquiry into the requisites of Rule 23, by the court sua sponte." *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981). And, "it is essential that a [party] be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives." *Id.* Class certification is proper "only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)). The Court is not satisfied that it can conduct the requisite "rigorous analysis" based solely on the evidence attached to the motion for class certification and the limited correspondence between Converse College and Mr. Hampton, representative of the CHE, attached to the Plaintiffs' reply.

The Court agrees with CHE Defendants' arguments and hereby denies the motion for class certification with permission to refile once relevant discovery has been completed.

## CONCLUSION

After careful consideration of the parties' briefs, the Court DENIES Plaintiffs' motion for class certification with permission to refile once an adequate factual record has been developed, and DENIES CHE Defendants' motion to dismiss or for judgment on the pleadings.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 31, 2016
Greenville, South Carolina